The decision below is signed as a decision of

the court.

Signed: January 24, 2005.



S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| 1900 M RESTAURANT | ) | Case No. 03-00717 |
| ASSOCIATES, INC., | ) | (Chapter 11) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| 1900 M RESTAURANT | ) | |
| ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 04-10059 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

DECISION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

The plaintiff, 1900 M Restaurant Associates, Inc., is the

debtor in the case, pending under chapter 11 of the Bankruptcy

Code (11 U.S.C.), to which this adversary proceeding relates.

Its complaint seeks an order compelling the United States of

America to have its Internal Revenue Service ("IRS") consider

under § 7122(a) of the Internal Revenue Code (26 U.S.C.) an

offer-in-compromise submitted by the debtor to the IRS on IRS

Form 656 in January 2004, after the commencement of the

bankruptcy case, but before the filing of any proposed chapter 11

plan.  (The offer-in-compromise proposed a schedule of payments

to the IRS in satisfaction of its claims for less than the full

amount of those claims.)  The complaint also seeks a declaration

that the IRS's policy to refuse to consider offers-in-compromise

submitted on Form 656 during the pendency of a case under chapter

11 of the Bankruptcy Code, and the IRS's refusal to consider the

January 2004 offer-in-compromise based on that policy, constitute

discrimination in violation of 11 U.S.C. § 525(a).  Upon

consideration of the parties' cross-motions for summary judgment,

the court will dismiss the proceeding.

I

Section 7122(a) of the Internal Revenue Code provides:

(a) AUTHORIZATION.--The Secretary may compromise
any civil or criminal case arising under the internal
revenue law prior to reference to the Department of
Justice for prosecution or defense; and the Attorney
General or his delegate may compromise any such case
after reference to the Department of Justice for
prosecution or defense.

An offer to compromise a tax liability pursuant to § 7122 "must

be submitted according to the procedures, and in the form and

manner, prescribed by the Secretary" (26 C.F.R. § 301.7122-

1(d)(1)), and "[t]he IRS may . . . return an offer to compromise

a tax liability if it determines that the offer was submitted

solely to delay collection **or was otherwise nonprocessable**" (26

C.F.R. § 301.7122-1(d)(2) (emphasis added)).  The procedural

details regarding offers-in-compromise have been left to Rev.

Proc. 2003-71.  Generally, offers-in-compromise may be submitted

on IRS Form 656, the form the debtor employed here.  However, the

Revenue Procedure directs IRS personnel to treat any such offer-

in-compromise as "nonprocessable" if a bankruptcy case of the

taxpayer is pending.  As set forth in IRS Chief Counsel Notice

2004-25 (July 12, 2004), the IRS "considers payment proposals

submitted by taxpayers in bankruptcy through the plan

confirmation process."  Instead of employing what the Chief

Counsel Notice refers to as "the bulk processing operations

established for the high volume of administrative offers-in-

compromise received by the Service," the Notice indicates that

the IRS vests in employees of the IRS's office which handles

insolvency matters the responsibility "to consider payment

proposals, usually in the form of a proposed plan, regarding the

payment of the Service's claims in a bankruptcy case."  The

Notice lays out several factors for IRS insolvency employees to

consider in making a discretionary determination regarding

whether to accept a plan that provides less than what is

statutorily required to be paid under the Bankruptcy Code.  Among

the criteria which the Notice indicates are to be employed is

"whether creditors with the same priority, such as state taxing

authorities, are accepting less than full payment of their

claims."

In compliance with the Revenue Procedure, the IRS returned the debtor's January 2004 Form 656 offer-in-compromise as nonprocessable.  Subsequently the debtor filed a proposed amended plan of reorganization which assumes that its offer-in-compromise will be processed and which incorporates alternative terms in the event that the offer-in-compromise is not accepted.  The IRS, through the Department of Justice, has objected to confirmation of the debtor's proposed plan.

II

In seeking to compel processing of its offer-in-compromise, the debtor relies on 11 U.S.C. § 525(a) which provides in relevant part that:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a **license, permit, charter, franchise, or other similar grant** to, [or] . . . discriminate with respect to such a grant against . . . a person that is . . . a debtor under this title . . . solely because such . . . debtor is . . . a debtor under this title . . . .

[Emphasis added.]  Based on Macher v. United States (In re Macher), 2003 WL 23169807 (Bankr. W.D. Va.), aff'd sub nom. United States v. Macher (In re Macher), 303 B.R. 798 (W.D. Va. 2003), and Holmes v. United States (In re Holmes), 298 B.R. 477 (Bankr. M.D. Ga. 2003), aff'd sub nom. IRS v. Holmes, 309 B.R. 824 (M.D. Ga. 2004), the court concludes that 11 U.S.C. § 525(a) does not apply to the IRS's refusal to consider an offer-in-

4

compromise under § 7122 during the pendency of a bankruptcy case.
But see Mills v. United States (In re Mills), 240 B.R. 689
(Bankr. S.D. W.Va. 1999); Chapman v. United States (In re
Chapman), 1999 WL 550793 (Bankr. S.D. W.Va. 1999).

To elaborate, the debtor's asserted "right to submit an
offer-in-compromise" on Form 656 is not a "license, permit,
charter, or franchise" within the ordinary meaning of those
words.  Nor is it a "grant" within any of the ordinary meanings
of that word as discussed in Stoltz v. Brattleboro Hous. Auth.
(In re Stoltz), 315 F.3d 80, 89-90 (2nd Cir. 2002),[1] and
certainly not a grant similar to a "license, permit, charter,
[or] franchise" as required by § 525(a).

The government's compromise of tax claims, a modification of
debt obligations, is similar to the governmental programs for
extensions of credit which were held not to fall within the
categories of § 525(a) in Watts v. Pennsylvania Hous. Fin. Co.
(In re Watts), 876 F.2d 1090 (3d Cir. 1989), and Toth v. Michigan
State Hous. Dev. Auth., 136 F.3d 477 (6th Cir.), cert. denied,
524 U.S. 954 (1998).  The debtor's reliance on Stoltz is
misplaced because Stoltz involved revocation of a public housing
lease, a clear property right, that qualified as a "grant" in the

---

[1] For the sake of brevity, the court incorporates by
reference the Stoltz opinion's discussion of the ordinary meaning
of the word "grant."

5

ordinary sense of that word.[2]   Accordingly, the debtor is

entitled to no relief under § 525(a).

III

The debtor alternatively seeks an order under 11 U.S.C. §

105(a) compelling the IRS to consider its Form 656 offer-in-

compromise.  Section 105(a) provides in relevant part that "[t]he

court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title."  To

the extent that the debtor is invoking the remedy of mandamus,

the relief it seeks is inappropriate.

A.

As noted in the legislative history to § 105(a), the

statute:

> is similar in effect to the All Writs Statute, 28
> U.S.C. 1651 . . . .  The section is repeated here for
> the sake of continuity from current law and ease of
> reference, and to cover any powers traditionally
> exercised by a bankruptcy court that are not
> encompassed by the All Writs Statute.

H.R. Rep. 95-595, 95th Cong., 1st Sess., at 316-17 (1977),

---

[2]  However, it is debatable (as discussed in the dissenting
opinion) whether the lease was a grant similar to a "license,
permit, charter, [or] franchise" as required by § 525(a).
Stoltz, 315 F.3d at 95-96 (dissenting opinion).  Moreover, it is
debatable whether a public housing authority's exercise of its in
rem rights as a creditor to evict the debtor under a public
housing lease, instead of denying the debtor the right to obtain
a public housing lease, comes within § 525(a).  See In re
Valentin, 309 B.R. 715 (Bankr. E.D. Pa. 2004); In re Bacon, 212
B.R. 66 (Bankr. E.D. Pa. 1997).

reprinted in 1978 U.S.Code Cong. & Ad. News 5963, 6273-74.[3]  To

the extent the debtor seeks to compel performance of an alleged

duty, the relief the debtor seeks is in the nature of mandamus.

See Georges v. Quinn, 853 F.2d 994, 995 (1st Cir. 1988); United

States v. Brock (In re Wingreen Co.), 412 F.2d 1048, 1051 (5th

Cir. 1969).  The writ of mandamus is one of the writs that have

traditionally been available under the All Writs Statute.  See

Norton v. Southern Utah Wilderness Alliance, 542 U.S. __, ___,

124 S.Ct. 2373, 2379 (2004).  Accordingly, to the extent

appropriate, mandamus may be granted under 11 U.S.C. § 105 as

well.

     Although there is also a specific mandamus statute

applicable to officers and agents of the United States, 28 U.S.C.

§ 1361, that provision was enacted as part of the Mandamus and

Venue Act of 1962 which was intended to make the use of the

remedy more readily available by, for example, not limiting

mandamus actions to the district in which the agency's head

resided.  See Stafford v. Briggs, 444 U.S. 527, 535 (1980).

Accordingly, decisions which deny mandamus on general mandamus

principles under § 1361 are equally applicable to requests for

---

     [3]  28 U.S.C. § 1651(a) provides:

     The Supreme Court and all courts established by Act of
     Congress may issue all writs necessary or appropriate
     in aid of their respective jurisdictions and agreeable
     to the usages and principles of law.

relief in the nature of mandamus under the All Writs Statute or its bankruptcy analog, 11 U.S.C. § 105.

As observed in Consolidated Edison Co. of New York, Inc. v. Ashcroft, 286 F.3d 600, 605 (D.C. Cir.), cert. denied, 537 U.S. 1029 (2002):

> "[A] 'drastic' remedy, 'to be invoked only in extraordinary situations,'" In re Papandreou, 139 F.3d 247, 249 (D.C. Cir. 1998) (quoting Kerr v. U.S. Dist. Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976)), mandamus is inappropriate except where a public official has violated a "ministerial" duty.  Such a duty must be "so plainly prescribed as to be free from doubt and equivalent to a positive command.... [W]here the duty is not thus plainly prescribed, but depends on a statute or statutes the construction or application of which is not free from doubt, it is regarded as involving the character of judgment or discretion which cannot be controlled by mandamus." Wilbur v. United States, 281 U.S. 206, 218-19, 50 S.Ct. 320, 324-25, 74 L.Ed. 809 (1929).

And as observed in Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002):

> The "remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances."  Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.'"

(Citations omitted.)  See also Heckler v. Ringer, 466 U.S. 602, 616 (1984) (clear nondiscretionary duty required).

B.

The IRS owes no clear duty to the debtor under § 7122 to process an offer-in-compromise submitted on Form 656 which its

Revenue Procedure has specifically treated as nonprocessable when

a bankruptcy case of the taxpayer is pending.  Section 7122 does

not command the Secretary to consider an offer-in-compromise; it

only provides that the Secretary or the Department of Justice, as

the case may be, **may** compromise a civil tax liability.  The

discretion vested in the Secretary to compromise carries with it

the discretion not to exercise the Secretary's discretion.  See

United States v. Smith, Barney, Harris, Upham and Co., 45 AFTR2d

80-1105, 80-1 USTC ¶ 9108 (S.D.N.Y. 1979) ("[T]he decision

whether to discuss settlement and whether to issue a summons is a

discretionary one that cannot be compelled by the court."

(Citation omitted.)); Carroll v. IRS, 14 AFTR2d 5564; 64-2 USTC ¶

9687 (E.D.N.Y. 1964) ("The decision to accept or reject a

compromise offer by its nature involves the discretion of

administrative authority and can not be compelled by any action

for a mandatory injunction.").  See also Horton Homes, Inc. v.

United States, 936 F.2d 548, 554 (11th Cir. 1991) (except in a

case of invidious discrimination which violates the Constitution,

"**judicial review of IRS's** exercise or **nonexercise of discretion**

under section 6404(e)(1) [providing that the Secretary may abate

an assessment of interest] **is not available**" (emphasis added));[4]

---

[4]  See also Carlson v. United States (In re Carlson), 126
F.3d 915, 920 (7th Cir. 1997), cert. denied, 523 U.S. 1060 (1998)
(holding that an abatement of interest under § 6404(e)(1) is
within the sole authority of the Secretary of the Treasury, "and
as such it is beyond the scope of judicial review" (citations

9

United States v. Williams, 514 U.S. 527, 537 n.9 (1995) ("§

6325(b)(3) [Secretary's discretionary authority to issue a

certificate of discharge] presents no question of administrative

exhaustion as a prelude to judicial review, for that 'remedy'

lies entirely within the Government's discretion."); E.J.

Friedman Co. v. United States, 6 F.3d 1355, 1358, 1359 (9th Cir.

1993) (decision whether to discharge lien as valueless is within

Secretary's discretion and accordingly unreviewable under

Administrative Procedure Act and a bar to quieting title in a 28

U.S.C. § 2410 action on the basis of valuelessness).

Although Mills, 240 B.R. at 696, held that consideration of

offers-in-compromise is a non-discretionary duty, it relied on a

subsequently discredited statement, purely unnecessary dictum, in

United States v. Garden State National Bank, 465 F. Supp. 437

(D.N.J.), aff'd, 607 F.2d 61 (3d Cir. 1979).  Garden State was a

summons enforcement proceeding in which the district court

addressed the issue of good faith regarding issuance of the

summonses by the IRS during an ongoing criminal investigation,

---

omitted)).  Although Horton Homes remains good law for the
general principle that, unless the statute provides otherwise,
the Secretary's nonexercise of discretion is not subject to
judicial review, it has been superseded by a 1996 amendment to
the statute.  Review by the Tax Court of the Secretary's decision
not to abate interest is now available under 26 U.S.C. § 6404(h).
See Miller v. Commissioner of Internal Revenue, 310 F.3d 640 (9th
Cir. 2002).  Some courts hold that in light of that amendment,
the Secretary's decision is also reviewable in a refund suit in
the district court.  See Beall v. United States, 336 F.3d 419
(5th Cir. 2003).

and testimony that if a taxpayer requests a settlement

conference, the taxpayer:

> will at most be allowed to come in, and will be
> listened to, but no negotiations will be engaged in
> until after the investigation has been completed, and
> the internal reviews that follow have resulted in a
> decision (arrived at unilaterally by IRS and not by
> negotiation) not to refer [the case] to the Department
> of Justice [for criminal prosecution].

Garden State, 465 F. Supp. at 439.  It was in that context that

the court stated that "[w]hile the grant of authority to

compromise does not command that a compromise agreement be

reached, it does imply a mandate to negotiate, to make the

effort, to explore the potential for compromise before deciding

unilaterally whether or not to refer [the case to the Department

of Justice for criminal prosecution]."  Garden State, 465 F.

Supp. at 439-40.  As the district court itself recognized, the

statement was unnecessary to its decision because the taxpayer

had made no offer.  On appeal, the court of appeals declined to

adopt this dictum, affirming on different grounds, and expressly

held that "the refusal of the Service to enter into compromise

negotiations, standing alone, does not amount to 'bad faith.'"

Garden State, 607 F.2d at 73.[5]  The court of appeals thus

---

[5]   See also Garden State, 607 F.2d at 66 n.7 ("We reject any
suggestion that enforcement may be granted or denied wholly upon
the basis of a taxpayer's request or lack of request for a
compromise conference, or wholly upon the availability or
unavailability of a compromise negotiation conducted with
I.R.S.").

11

implicitly recognized that there are circumstances in which the
Secretary ought to be able to exercise discretion not to consider
an offer-in-compromise.  Subsequently, the court in Smith,
Barney, 45 AFTR2d 80-1105, 80-1 USTC ¶ 9108, criticized Garden
State as "logically, practically, and legally unsound,"[6] and
recognized the nonreviewable discretionary nature of the
Secretary's settlement authority.  The Mills decision fails to
acknowledge Smith, Barney, and is otherwise unpersuasive in
placing reliance on the district court's misguided dictum in
Garden State.

    In exercising the statutory discretion of § 7122(a), the
Secretary is generally free to specify what types of offers will
be processed.  See Boulez v. Commissioner, 810 F.2d 209 (D.C.
Cir.), cert. denied, 484 U.S. 896 (1987) (Secretary could refuse
by regulation to consider oral offers-in-compromise).  26 U.S.C.
§ 7122(c)(1) requires the Secretary to prescribe guidelines for
IRS personnel "to determine whether an off-in-compromise is
adequate and should be accepted to resolve a dispute."  The
Secretary has viewed the issue of adequacy as including the issue
of whether an offer-in-compromise is processable: an offer to

---

[6] Indeed, the same district judge who wrote the decision in
Garden State appears to have retreated from his dictum because he
later observed that what he said in Garden State "was said by way
of hope or expectation that . . . the comments might induce both
taxpayers and I.R.S. to undertake good faith negotiations for
resolution of any disagreement . . . ." "Pseudonym Taxpayer" v.
Miller, 497 F. Supp. 78, 79 (D.N.J. 1980).

compromise a tax liability pursuant to § 7122 "must be submitted according to the procedures, and in the form and manner, prescribed by the Secretary" (26 C.F.R. § 301.7122-1(d)(1)), and "[t]he IRS may . . . return an offer to compromise a tax liability if it determines that the offer was submitted solely to delay collection **or was otherwise nonprocessable**" (26 C.F.R. § 301.7122-1(d)(2) (emphasis added)).

The details of what offers-in-compromise are nonprocessable has been left to Rev. Proc. 2003-71, § 5 ("When an Offer Becomes Pending and Return of Offers"), 2003-36 I.R.B. 517, and it makes clear that an offer-in-compromise is nonprocessable when a bankruptcy case is pending.[7]

The only statutory limitations on the Secretary's discretion under § 7122(a) arise implicitly from three parts of 26 U.S.C. § 7122(c):

- The first of these is the command of § 7122(c)(2)(B) that the Secretary's guidelines for determining whether an offer-in-compromise is adequate and should be accepted must, in effect, direct IRS personnel not

---

[7]  The Revenue Procedure's § 5 ("When an Offer Becomes Pending and Return of Offers") addresses what offers to compromise tax liabilities are nonprocessable.  Section 5.01 of the Revenue Procedure provides that one of the minimum requirements making an offer-in-compromise processable is that "the taxpayer is not in bankruptcy."  In turn, § 5.03 provides that an offer not meeting this or other minimum requirements is not processable.

blindly to apply standard allowances prescribed under

the guidelines for basic living expenses.[8]  This

implicitly means that the Secretary has no discretion

to treat an offer as nonprocessable solely because the

offer proposes not to follow the guidelines' standard

allowances for basic living expenses.

- The second is the command of § 7122(c)(3)(A) that IRS

  personnel "shall not reject an offer-in-compromise from

  a low-income taxpayer solely on the basis of the amount

  of the offer."  This implicitly requires that the IRS

  not treat an offer-in-compromise as nonprocessable

  solely because it fails to propose payment of some

  minimum amount.

- Finally, § 7122(c)(3)(B) provides that in the case of

  an offer-in-compromise which relates only to issues of

  liability of the taxpayer, "(ii) the taxpayer shall not

---

[8]  To explain in greater detail, § 7122(c)(1) requires the
Secretary to "prescribe guidelines for [IRS personnel] to
determine whether an offer-in-compromise is adequate and should
be accepted to resolve a dispute."  In turn, § 7122(c)(2)(A)
requires that "[i]n prescribing guidelines . . ., the Secretary
shall develop and publish schedules of national and local
allowances designed to provide that taxpayers entering into a
compromise have an adequate means to provide for basic living
expenses."  Then, § 7122(c)(2)(B) requires that the Secretary's
guidelines must "provide that [IRS personnel] shall determine, on
the basis of the facts and circumstances of each taxpayer,
whether the use of the schedules published under subparagraph (A)
is appropriate **and shall not use the schedules to the extent such
use would result in the taxpayer not having adequate means to
provide for basic living expenses.**" [Emphasis added.]

be required to provide a financial statement."

Accordingly, such an offer-in-compromise could not be

treated as nonprocessable solely because it lacked a

financial statement.

Except for those implicit restrictions, however, the statute is

silent regarding what offers the Secretary may treat as

nonprocessable.  Plainly the decision under the Revenue Procedure

not to process an offer-in-compromise submitted when a taxpayer

is in bankruptcy does not run afoul of those restrictions.

That administrative review and administrative appeal rights

exist under § 7122(d) with respect to any rejection of a proposed

offer-in-compromise does not alter this analysis.  Under 26

C.F.R. § 301.7122-1(f)(5)(ii), a regulation which has the force

of law, treating an offer as nonprocessable is not the same thing

as rejecting a processable offer-in-compromise.  The IRS was

completely within the limits of its permissible discretion in

refusing to process an offer-in-compromise that was presented in

a vacuum without a chapter 11 plan having been filed.[9]

---

[9]  If the IRS accepts a debtor's proposed plan which
proposes less than full payment of the IRS's claims, and the plan
is confirmed, the result is a compromise for which the authority
to compromise is § 7122(a).  However, the plan is not an offer-
in-compromise because a plan becomes a binding compromise through
the plan confirmation process, not through the IRS's having
accepted the plan.  It would not make sense, given the time
limits for objecting to plans, to treat a plan itself as an
offer-in-compromise with the delays that would arise from
administrative review and administrative appeal under § 7122(d).
The issue is an academic one here because the IRS has referred

Although <u>Chavez v. United States</u>, 93 AFTR2d 2004-2386 (W.D.
Tex. 2004), held that the IRS's decision to return an offer as
nonprocessable was reviewable to determine whether it was an
abuse of discretion, it did so under specific statutory
authority, 26 U.S.C. § 6630(d)(1), which vested the district
court with authority to review the IRS's decision to proceed with
levy, including in that regard review of the administrative
consideration of offers-in-compromise as a factor in deciding to
proceed with levy.  Section 6630 has not been invoked here (and
will not likely become applicable while the bankruptcy case is
pending because the automatic stay of 11 U.S.C. § 362(a) has
barred the IRS from proceeding with enforcement of its tax claims
by levy).  With the only statutory provision that provides for
judicial review of decisions regarding offers-in-compromise being
inapplicable at this juncture, this court ought not review the
IRS's discretionary decision to treat as nonprocessable the
debtor's attempted offer-in-compromise.   <u>Cf. Ballhaus v. I.R.S.</u>,
341 F. Supp. 2d 1145 (D. Nev. 2004) (only Tax Court is vested
with statutory authority to review Secretary's discretionary
authority to abate interest); <u>Beall v. United States</u>, 336 F.3d
419, 427 n.9 (5th Cir. 2003) (even though district court may
review Secretary's refusal to abate interest in a refund suit

the debtor's plan to the Department of Justice for objection,
thus depriving the IRS of any further ability to act under §
7122(a).

16

under 28 U.S.C. § 1346 and 26 U.S.C. § 7422, the Administrative
Procedure Act, and implicitly, mandamus, are not appropriate
vehicles for such review).

Moreover, even if review were available, the court would not
view as an abuse of discretion the IRS's decision to treat the
debtor's offer-in-compromise as nonprocessable when the debtor
is in bankruptcy.  When a bankruptcy case is pending, the IRS
rationally can determine that it is inappropriate to assay the
treatment of the IRS's claims of offer-in-compromise procedures
in isolation from the terms of a proposed plan and from the plan
confirmation process.  This is particularly true when the offer-
in-compromise, as here, does not include all of the terms of any
proposed plan.  Even when a taxpayer's offer-in-compromise
includes a proposed plan, the debtor is not in a position to
guarantee that it can honor an acceptance of the offer-in-
compromise because a proposed plan's effectiveness is contingent
on confirmation of the plan by the bankruptcy court.  Moreover,
if a plan is unsatisfactory, and referred on that basis to the
Department of Justice for objection, the IRS loses jurisdiction
to accept the offer-in-compromise.  It makes sense for the IRS to
decide that the treatment of the IRS's claims in bankruptcy must
be addressed by the IRS by way of the plan confirmation process
instead of the ordinary offer-in-compromise procedure.

The Chavez court viewed the Internal Revenue Manual

17

provision regarding returning an offer-in-compromise as
inconsistent with 26 C.F.R. § 301.7122-1(b)(3)(iii) which set
forth grounds for **rejection** that mirror the Internal Revenue
Manual's standard for **returning** (and treating as no longer
processable) an offer-in-compromise based on a taxpayer's
continuing failure to comply with ongoing obligations to file tax
returns and make timely deposits of employment taxes.  Treating
an offer-in-compromise as nonprocessable when the taxpayer is in
bankruptcy does not conflict with any part of 26 C.F.R. §
301.7122-1.

 Chavez also pointed to the fact that the Internal Revenue
Manual does not have the force of law, as is true of Revenue
Procedures as well, but not true of 26 C.F.R. § 301.7122-1.  That
observation was necessary to support the determination in Chavez
that an Internal Revenue Manual provision may not override a
Treasury Regulation, but it does not alter the analysis here.  It
was entirely appropriate for the Secretary to leave the issue of
nonprocessability to a Revenue Procedure instead of a Treasury
Regulation.  Section 7122 charges the Secretary to prescribe
"guidelines," not "regulations," in contrast to other provisions
of the Internal Revenue Code (such as 26 U.S.C. §§ 1(g)(7)(C);
1(g)(7)(h)(9); 21(f); 23(i); and 4462(i)(4)) which require the

18

Secretary to prescribe regulations.[10]   The Revenue Procedure
provision at issue, requiring offers-in-compromise to be treated
as nonprocessable when the taxpayer is in bankruptcy, was thus
duly promulgated, and does not conflict with either 26 U.S.C. §
7122 or 26 C.F.R. § 301.7122-1.

In conclusion, the court cannot find that treating offers-
in-compromise as nonprocessable in bankruptcy violates a clear
nondiscretionary duty on the part of the IRS.  Accordingly,
mandamus is unavailable to compel the IRS to process the debtor's
offer-in-compromise.

C.

Mandamus is also unavailable on an alternative ground.  As
held in DRG Funding Corp. v. Secretary of HUD, 76 F.3d 1212, 1216
(D.C. Cir. 1996), "[m]andamus is an extraordinary remedy,
available only if other relief is inadequate." [Citation
omitted.]  The debtor has proposed a plan of reorganization.  The
IRS, to protect its interests, evaluated the plan and decided to
request the Department of Justice to object to the plan.  Through
that process, the debtor has already received a decision
regarding the acceptability to the IRS of the treatment the
debtor proposes.  Because the debtor has already achieved a
decision regarding the acceptability of the treatment his plan

---

[10]   Section 4462(i)(4) is particularly instructive because
it requires the Secretary to prescribe **regulations**, not
**guidelines**, governing settlements of certain excise tax claims.

proposes for the IRS's claims, he has achieved his end in filing

an offer-in-compromise, and mandamus is inappropriate. Power v.

Barnhart, 292 F.3d at 787.  That the end was achieved by the

processing of the debtor's proposed plan, instead of by

processing of an offer-in-compromise (by an office with less

experience with bankruptcies), is of no consequence.  As

discussed in Power v. Barnhart,787-88, the court in Northern

States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754 (D.C. Cir.

1997), declined to grant mandamus because contractual remedies

under a standard contract between the parties afforded the

plaintiff "another potentially adequate remedy" if the agency

failed timely to perform an unconditional statutory duty.

Northern States, 128 F.3d at 759.  It follows that a decision on

the acceptability of the debtor's plan achieved by processing of

its proposed plan was an adequate remedy to achieve the end the

debtor desired, even though not employing the means the debtor

desired. See Powers v. Barnhart, 292 F.3d at 787 ("were we to

define the means to the end as the end itself, we would simply

write the third prong out of the mandamus test.").

The debtor is still free to discuss compromise on modified

terms with the Department of Justice, or to attempt to obtain

confirmation of a plan in accordance with the requirements of the

Bankruptcy Code.  If the debtor's plan does not pass muster under

those requirements, the government's refusal to accept that

20

treatment has not deprived the debtor of any relief to which it
is entitled.  If confirmation is denied, leading to a dismissal,
the debtor may take steps, as in <u>Chavez</u>, to obtain administrative
review under 26 U.S.C. § 6330(d)(1) of any IRS decision to
proceed with levy instead of compromising.

D.

In the midst of the pendency of this adversary proceeding,
the debtor has proposed a plan to which the IRS, through the
Department of Justice, has objected.  Upon objecting to the
debtor's plan on behalf of the IRS, the Department of Justice is
vested with the authority to compromise under § 7122, and it
obviously can insist on negotiating the terms of a plan in a
fashion different than the use of Form 656, as 26 C.F.R. §
301.7122-1 does not apply to the Department of Justice.  <u>See</u> <u>In
re Matter of Grand Jury Applicants (C. Schmidt & Sons, Inc.)</u>, 619
F.2d 1022, 1028 (3d Cir. 1980); <u>Hartzog v. United States</u>, 6
Cl.Ct. 835 (1984); <u>Blackmon & Assocs., Inc. v. United States</u>, 409
F.Supp. 1264, 1265 (N.D. Tex. 1976).  Because the IRS no longer
has authority to approve a compromise of the debtor's tax
liabilities, an order to compel it to process the Form 656 would
be a pointless exercise.  For this additional reason, mandamus is
inappropriate at this stage.

21

E.

Similarly, 11 U.S.C. § 1129(a)(9)(C) imposes no nondiscretionary duty on the IRS to process offers-in-compromise. Section 1129(a)(9)(C) specifies a treatment a plan must accord certain tax claims of the IRS unless the IRS agrees to a different treatment.  Obviously the IRS has complete discretion to decide whether to agree to such different treatment or whether even to consider agreeing to such different treatment.  In any event, the plan process is an adequate alternative remedy available to the debtor to obtain the IRS's position in the case.

F.

In conclusion, mandamus is inappropriate here.  When a taxpayer becomes a debtor in a chapter 11 bankruptcy case, the Secretary has concluded, pursuant to an exercise of discretion embodied in the applicable Revenue Procedure, that the best interests of the government warrant addressing the treatment of the government's tax claims in the context only of considering a proposed plan, and to return any Form 656 offers-in-compromise as nonprocessable.  This discretionary decision under 26 U.S.C. § 7122 and 11 U.S.C. § 1129(a)(9)(C) is not to be countermanded by the employment of the mandamus remedy which is limited to compelling the performance of strictly ministerial duties, and which is unavailable when, as here, an alternative adequate remedy (the plan confirmation process) is available to learn the

22

IRS's position.

IV

The debtor properly observes that in invoking § 105(a), it is not confined to seeking mandamus relief.  It urges that the requested order is necessary to the plan confirmation process because it will allow the debtor to obtain a tax repayment agreement that will permit it to formulate a chapter 11 plan. Accordingly, the debtor urges that the requested relief is justified under § 105(a), not as mandamus relief, but as necessary to facilitate reorganization.

In Macher, 303 B.R. at 802, the district court concluded that the fact that § 1129(a)(9)(C) contemplates that the IRS may agree to less than full payment of claims, combined with "the Bankruptcy Code's 'fresh start' principle, and the common sense realities of bankruptcy reorganizations," require that the IRS not refuse to consider an offer-in-compromise.  Accord, Holmes, 309 B.R. at 828; In re Peterson, 317 B.R. 532, 534 (Bankr. D. Neb. 2004) (following Holmes).  This court respectfully declines to follow those decisions, and rejects the debtor's argument. Specifically, none of the three grounds invoked by Macher justify its conclusion that § 105 relief of the character sought here is appropriate.

23

A.

First, "the common sense realities of bankruptcy
reorganizations" referred to by <u>Macher</u> warrant allowing the IRS
to treat Form 656 offers-in-compromise as nonprocessable once a
chapter 11 bankruptcy case intervenes.  <u>Macher</u> and its progeny
fail fully to consider the dynamic which arises from a bankruptcy
case and which warrants the IRS being allowed to address
treatment of its claims other than through the Form 656 offer-in-
compromise process that is divorced from the realities of that
dynamic.  The Chief Counsel Notice makes clear the IRS's
willingness, principally in the context of addressing a proposed
plan, to consider agreeing to payment of less than the full
amount of its tax claims.  That Notice lays out sound policy
grounds for the IRS's decision (and for bankruptcy courts' not
countermanding that decision) to address treatment of its tax
claims in a chapter 11 case principally in the context of a
proposed plan instead of Form 656 offers-in-compromise.

As recognized by 11 U.S.C. § 1112(a)(4) and (5), the ultimate
goal of such a case generally ought to be to achieve a confirmed
plan, and chapter 11 plans present an entirely different dynamic
than exists outside of a bankruptcy case.  Addressing a proposed
compromise of tax claims in a chapter 11 case in a context other
than the new playing field that arises from the commencement of
that case would be to consider the IRS's interests in a vacuum.

24

Principally, the IRS will prudently wish to consider compromise in the context of a proposed plan.[11]  Among factors a creditor may consider in electing to agree to a proposed plan are the specific treatment of its claim, and the treatment of other creditors' claims (such as whether such claims  are being paid more generously or more quickly), as well as the feasibility of the plan, and default provisions.  Those issues cannot be assessed without a proposed plan.  The chapter 11 process enables creditors to assess a proposed plan,[12] and affords procedures for a creditor's participation in the plan confirmation process.[13] To require the IRS to process a Form 656 offer-in-compromise,

---

[11]   The IRS also negotiates treatment of its claims in the context of other specialized aspects of bankruptcy such as a debtor's requests under 11 U.S.C. § 363 to use cash collateral or to sell IRS collateral free and clear of liens.

[12]   The bankruptcy courts require debtors-in-possession to file operating reports in a chapter 11 case in part to allow interested parties to assay the feasibility of a proposed plan. To obtain confirmation of a plan, the debtor generally must file a disclosure statement under 11 U.S.C. § 1125 which provides information which permits creditors to make informed judgments regarding voting on the plan.

[13]   Under 11 U.S.C. § 1129(a)(9)(C), the IRS can choose to agree or not agree to the treatment of its allowed claims entitled to priority under 11 U.S.C. § 507(a)(8).  Under 11 U.S.C. § 1126, the IRS can vote to accept the plan or to reject the plan with respect to its non-priority tax claims (that is, any claims in a class of allowed secured claims or a class of allowed unsecured claims not entitled to priority).  The IRS can also elect, as occurred here, to request the Department of Justice to object under F.R. Bankr. P. 3020(b) to the debtor's plan.

particularly one which utterly fails to set forth terms of a
proposed chapter 11 plan, is neither "necessary or appropriate to
carry out the provisions of [the Bankruptcy Code]" as required to
grant § 105(a) relief.

Moreover, § 105(a) does not confer on a bankruptcy court a
license to impose on a creditor restrictions regarding how that
creditor shall address its rights in a bankruptcy case according
to the bankruptcy court's views of the "common sense realities of
bankruptcy reorganization":

> [S]ection 105(a) does not provide bankruptcy courts
> with a roving writ, much less a free hand.  The
> authority bestowed thereunder may be invoked only if,
> and to the extent that, the equitable remedy dispensed
> by the court is necessary to preserve an identifiable
> right conferred elsewhere in the Bankruptcy Code.  See
> Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206,
> 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (explaining that a
> bankruptcy court's equitable powers "can only be
> exercised within the confines of the Bankruptcy Code");
> Noonan v. Sec'y of HHS (In re Ludlow Hosp. Soc'y,
> Inc.), 124 F.3d 22, 27 (1st Cir. 1997) (similar).

Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392,
403 (1st Cir. 2002) (bankruptcy court lacked power to modify a
reaffirmation agreement or compel the parties to enter into a
judicially-crafted reaffirmation agreement).  Cf. Grupo Mexicano
de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308,
332 (1999)("the equitable powers conferred by the Judiciary Act
of 1789 did not include the power to create remedies previously

unknown to equity jurisprudence.").[14]  The "common sense

realities of bankruptcy reorganization" are not an identifiable

right in the Bankruptcy Code.  Although a debtor has a right to

attempt to obtain a confirmed chapter 11 plan, the Bankruptcy

Code and the Federal Rules of Bankruptcy Procedure set forth the

tools that the debtor may employ in that endeavor and

correspondingly the rights of creditors in deciding whether to

agree to or contest such a plan.  To restrict a creditor in how

it addresses the treatment of its claims which will be the

subject of a plan, would not be "to carry out the provisions of

[the Bankruptcy Code]" but the exact opposite by depriving that

creditor of opportunities afforded it by the Bankruptcy Code.  As

the Supreme Court has recognized:

> Where a statute specifically addresses the particular
> issue at hand, it is that authority, and not the All
> Writs Act, that is controlling.  Although that Act
> empowers federal courts to fashion extraordinary
> remedies when the need arises, it does not authorize
> them to issue ad hoc writs whenever compliance with
> statutory procedures appears inconvenient or less
> appropriate.

Pennsylvania Bureau of Correction v. U.S. Marshals Serv., 474

U.S. 34, 43 (1985).  To confine the Secretary to the ordinary

offer-in-compromise program would not carry out provisions of the

Bankruptcy Code but would instead confer on the debtor a new

---

[14]   In Grupo Mexicano, the Court held that the equity
jurisdiction conferred on federal courts does not empower a court
to freeze assets for the benefit of a creditor.

procedural weapon not found in the Bankruptcy Code.

B.

Second, the "fresh start" principle is no basis for commanding the IRS to process a Form 656 offer-in-compromise in a vacuum divorced from consideration of a proposed plan.  The so-called "fresh start" is not a specific statutory provision.  Instead, certain provisions are viewed as giving the debtor certain "fresh start" relief, as in the case of the Bankruptcy Code's anti-discrimination provision already discussed (§ 525(a)) and the Bankruptcy Code's discharge and exemption provisions (see 11 U.S.C. §§ 522, 524, and 1141(d)(1)).  Those provisions, however, are limited in scope and are not a license to employ § 105(a) to create additional "fresh start" relief out of whole cloth without statutory authorization.  Again, as Jamo, 283 F.3d at 403, demonstrates in addressing the "fresh start" topic of reaffirmation agreements, § 105(a) is not a roving commission to do equity as the court sees fit, but instead must be tied to carrying out specific provisions of the Code.

As already demonstrated, § 525(a) (one of the statutory forms of "fresh start" relief) is unavailable to entitle the debtor to "fresh start" relief in the form of barring the IRS from treating Form 656 offers-in-compromise as nonprocessable once bankruptcy intervenes.  It would be entirely inappropriate to seize on the "fresh start" principles that underlie § 525(a)

28

and to expand the reach of those principles beyond the carefully limited relief afforded by § 525(a).

C.

From the foregoing, it is readily evident that the IRS's discretionary authority under § 1129(a)(9)(C) to agree to less than full payment of its claims is not an identifiable Bankruptcy Code right of a debtor which warrants § 105(a) relief of the character sought here.  The right rests in the IRS, not the debtor, and the relief sought here is neither necessary or appropriate to carry out that statutory right, and would impose on the IRS a nonexistent duty unenforceable by way of mandamus. The IRS should be allowed to exercise its discretion under § 1129(a)(9)(C), without interference by the court in how the IRS decides to approach that right.  Cf. Norwest Bank, 485 U.S. at 207 (decision of class of unsecured creditors to accept or reject plan "is for the creditors to make in the manner specified by the Code.  11 U.S.C. § 1126(c)." )

The debtor can point to no identifiable right conferred by the Bankruptcy Code whose preservation warrants requiring the IRS to process an offer-in-compromise in a vacuum divorced from an actual proposed plan.  A debtor has no right to have the IRS agree to a treatment of its claims less favorable than what is required by the Bankruptcy Code, and no right to compel the IRS to consider agreeing to such treatment in a vacuum devoid of an

actual proposed plan.  The Bankruptcy Code and Federal Rules of
Bankruptcy Procedure themselves set forth the procedures by which
a debtor may attempt to obtain a confirmed plan, and the IRS has
not acted contrary to those provisions.  Indeed, it has made
clear that it is in the context of those procedures that it will
address the treatment to which its claims will be subjected.

A court may (or may not) have the inherent authority to
order parties to attempt to negotiate acceptable terms of a plan,
but I need not decide that issue.[15]  Assuming that such a power
exists, it does not extend to directing a creditor to consider a
compromise of how much of its claims are to be paid under a
nonbankruptcy offer-in-compromise program in isolation from the
plan confirmation process.  The Chief Counsel Notice prescribes
consideration by IRS insolvency employees of a debtor's proposed
plan, submitted in accordance with bankruptcy procedures, to
determine whether it is in the IRS's best interests.  A court
ought not impose on the IRS instead the ill-fitted offer-in-
compromise procedures the IRS utilizes outside of bankruptcy.

---

[15]  The strongest case for arguing that such a power exists
is when the parties have appeared through counsel in the case and
the order is directed to the attorneys as officers of the court.

D.

The IRS ought not be treated differently than any other creditor in enjoying freedom to choose how it will deal with debtors in bankruptcy.  Consider the following example.  A private mortgagee has a unit which administers a mortgage default workout program outside of bankruptcy, but bars that unit from processing workout proposals once bankruptcy intervenes, and requires that consideration of treatment of its mortgage once bankruptcy intervenes will be addressed by a special bankruptcy unit and in the context of its rights under the Bankruptcy Code, not solely under the criteria that exist outside of a bankruptcy case.  Section 105(a) would be no basis for commanding the mortgagee to have its workout unit process a workout proposal under the criteria that exist outside bankruptcy, and it ought similarly not be employed against the IRS in the fashion the debtor seeks here.

This is reinforced by the character of the United States' form of government.  A bankruptcy court, as a part of the judicial branch of government, and in the absence of clear legislative authority to do so, ought to be loathe to interfere with the conduct in a bankruptcy case of a unit of the executive branch of government in protecting its interest in bankruptcy, particularly when that unit is charged with collecting the public fisc.

31

The courts that have employed § 105(a) against the IRS to command it to process Form 656 offers-in-compromise may have done so on a gut reaction that it is unfair discriminatory treatment for the IRS, as a governmental unit, to deprive a debtor of an opportunity the debtor would have outside of bankruptcy. However, unfair discriminatory treatment of a debtor is the topic that § 525(a) addresses, and as already demonstrated, § 525(a) does not bar the differing treatment the IRS accords debtors in and outside bankruptcy.  Just as a private creditor ought not be straight-jacketed by a grant of relief of the kind that the debtor seeks here, the IRS ought not be either.

V

For the foregoing reasons, the court will enter a judgment dismissing this adversary proceeding on the merits.

<u>[Signed above.]</u>

Copies to:

Janet M. Nesse, Marc E. Albert, and David I. Gold, Stinson, Morrison Hecker LLP  [counsel for plaintiff];

David M. Katinsky, Trial Attorney, Tax Division, U.S. Department of Justice [counsel for defendant];

Office of U.S. Trustee.